USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2047 

 ANN WARDER, ET AL.,

 Plaintiffs, Appellees,

 v.

DONNA E. SHALALA, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN
SERVICES, and NANCY ANN MIN DePARLE, ADMINISTRATOR OF THE HEALTH
 CARE FINANCING ADMINISTRATION,

 Defendants, Appellants.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Morris E. Lasker, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 

 Clifford M. Pierce, Assistant Regional Counsel, Department of
Health and Human Services, with whom Frank W. Hunger, Assistant
Attorney General, Department of Justice, Harriet S. Rabb, General
Counsel, and Nancy S. Nemon, Chief Counsel, Region I, Department of 
Health and Human Services, were on brief for appellants.

 James P. Kelly with whom Patrick M. Connolly, Kelly Law Firm,
Craig E. Stewart, Anne Robbins and Palmer & Dodge LLP were on brief
for appellees.

 _____________________
 
 July 27, 1998
 _____________________
 

 CAMPBELL, Senior Circuit Judge. This appeal relates to
the classification, for Medicare Part B reimbursement purposes, of
medical equipment made for persons suffering from severe
musculoskeletal problems. Produced by Appellees OrthoConcepts and
used by Appellee Warder, the equipment consists of braces, fitted
to the individual patient, on a wheeled base. The district court
upheld OrthoConcepts' challenge to an administrative ruling ("the
Ruling" or "HCFAR 96-1") from the Health Care Financing
Administration ("HCFA") that classifies this equipment as "durable
medical equipment" rather than as "braces." The former
classification limits Medicare reimbursement to devices used at
home, precluding reimbursement for such devices when used in
certain hospital and institutional settings. 
 Holding that HCFAR 96-1 was a substantive, or
legislative, rule requiring notice and comment, the court ruled it
to be invalid because notice and comment procedures had not been
followed prior to its issuance. The court also found that the
equipment in dispute was not "durable medical equipment," and
enjoined HCFA from treating it as such. 
 We disagree. We hold that HCFAR 96-1 is an interpretive
rule, and was not invalidated by HCFA's failure to have adopted
notice and comment procedures. We vacate the injunction on the
ground that HCFA's interpretation was a permissible one.

 BACKGROUND
1. Statutory and Regulatory Background
 A. Part B of the Medicare Act
 The Medicare Act, 42 U.S.C. 1395 et seq., establishes
a national health insurance program for the elderly and the
disabled. Congress authorized Appellant Secretary of Health and
Human Services to implement the Medicare statute by issuing both
substantive regulations and interpretive rules. See 42 U.S.C. 
1395hh. The Secretary has in turn delegated this authority to the
HCFA Administrator.
 Part B of the Medicare Act, 42 U.S.C. 1395j et seq.,
establishes a voluntary supplemental insurance program. Eligible
individuals enrolled in the program pay a monthly premium that,
along with congressionally appropriated funds, finances physicians'
and other health services. See id. 1395j. Part B has been
referred to as "a private medical insurance program that is
subsidized in major part by the Federal Government." Schweiker v.
McClure, 456 U.S. 188, 190 (1982).
 Part B benefits are administered by private insurance
carriers under contract with HCFA. See 42 U.S.C. 1395u. HCFA
reimburses a carrier for the costs of administering claims, and the
carriers act as HCFA's agents. See id. 1395u(a); 42 C.F.R. 
421.5(b). The carrier bears the initial responsibility for
determining whether an item or service billed to the Part B program
is covered and, if so, the amount to be paid. See 42 U.S.C. 
1395u. 
 B. Part B Coverage of DME and Braces
 Medicare Part B provides coverage for "medical and other
health services," 42 U.S.C. 1395x(s), that are "reasonable and
necessary for the diagnosis or treatment of illness or injury or to
improve the functioning of a malformed body member," id. 
1395y(a)(1)(A). The statute expressly covers braces, including
"leg, arm, back, and neck braces." Id. 1395x(s)(9). 
 Ordinarily, coverage will extend to any piece of
equipment that is reasonable and necessary for the treatment of an
eligible patient regardless of the place where it is used. 
However, Part B reimburses devices classified as "durable medical
equipment" ("DME") only when provided at the patient's "home" or
other "institution used as [the patient's] home," and not in a
hospital or skilled nursing facility ("SNF"). 42 U.S.C. 1395x(n)
(citing 1395x(e)(1) (defining hospital), 1395i-3(a)(1) (defining
SNF)). In other words, DME is reimbursable only when used in a
patient's home, with "home" being defined to exclude hospitals and
SNFs. 
 No similar restriction relates to "braces." See 42
U.S.C. 1395x(s)(9). Hence if a piece of medical equipment used
in a hospital or SNF is a "brace," it is reimbursable but not if
deemed to be DME.
C. DME and Braces Defined
 The medical device here, intended for persons with severe
musculosekeletal failure, includes a set of connected braces
attached to a wheeled base. See infra. While various provisions
define braces and DME, no single provision concisely differentiates
the two, leaving it open which category is implicated when, as
here, a brace-like device is used as part of a wheeled item that
might be classified as DME. 
 The principal statutory definition of DME states that
"[DME] includes iron lungs, oxygen tents, hospital beds, and
wheelchairs." 42 U.S.C. 1395x(s)(6) (emphasis supplied). 
Elsewhere the statute includes special payment provisions for
certain types of DME, including "items requiring frequent and
substantial servicing," id. 1395m(a)(3), and equipment customized
to an individual patient's needs, see id. 1395m(a)(4). However,
neither of these provisions can be read to expand 1395x(s)(6)'s
definition of DME, because both are expressly limited to a subset
of DME. See id. 1395m(13) (defining "covered item[s]" under 
1395m to be DME "as defined in section 1395x(n)").
 In 1990, Congress amended 1395m(a)(4) to add a
provision which ultimately, by its own terms, was superseded by
a HCFA regulation expressly providing that customized wheelchairs
were DME. P.L. 101-508, 4152(c)(4)(B). The amendment provided
that it would become effective on January 1, 1992, unless HCFA
developed its own criteria for the treatment of customized
wheelchairs as DME. In December, 1991, HCFA addressed customized
wheelchairs in a regulation that substantially tracked the language
of the amendment, providing that a wheelchair is DME if "uniquely
constructed or substantially modified for a specific beneficiary"
and "so different from another item used for the same purpose that
the two items cannot be grouped together for pricing purposes." 42
C.F.R. 414.224. In effect, Congress, and subsequently HCFA,
treated as DME any wheelchair modified in light of an individual
patient's disability, per a physician's instructions.
 The regulatory definition of DME focuses not on examples,
but rather on qualitative criteria, including the equipment's
durability:
 equipment, furnished by a supplier or a home
 health agency that 
 (1) Can withstand repeated use;
 (2) Is primarily and customarily used to
 serve a medical purpose;
 (3) Generally is not useful to an
 individual in the absence of an illness
 or injury; and
 (4) Is appropriate for use in the home
 [citing 42 C.F.R. 410.38, which in turn
 cites statutory provisions defining
 "home" to exclude hospitals and SNFs].
 
 42 C.F.R. 414.202. 
 The manual HCFA prepares for its carriers repeats the
regulatory criteria. See Medicare Carrier's Manual ("MCM") 
2000.1. Another provision in the manual goes farther, explaining
that DME includes "supplies and accessories" that are "necessary
for the effective use of [DME]." MCM, 2100.5.
 The statutory definition of "brace" is ostensive, listing
the sorts of braces that are covered. Id. 1395x(s)(9) (defining
orthotics as "leg, arm, back, and neck braces, and artificial legs,
arms, and eyes, including requirements if required because of a
change in the patient's physical condition"). The accompanying
regulation, 42 C.F.R. 414.202, tracks the statutory language. 
2. The OrthoConcepts Product
 Due to illness, injury, and in some cases old age,
thousands of Medicare beneficiaries suffer from musculoskeletal
failure so severe as to render them incapable of moving or
supporting their own limbs. These catastrophically crippled
patients are vulnerable to numerous painful conditions. One of the
most serious is contractures, a condition in which muscles become
rigid and resistant to elongation following a long period of
disuse. See Dorland's Illustrated Medical Dictionary 373 (28th ed.
1994). Other complications include the development of pressure
sores, circulatory problems, and infections. 
 To manage the condition of patients with grave
musculoskeletal failure, OrthoConcepts designed what it has
marketed as the "OrthoConcepts Seating System." The Seating System
consists of a set of connected braces the number and type
depending on the patient's condition attached to a wheeled base. 
The patient sits, or reclines, on the Seating System, and the
component braces maintain the patient in a position designed to
reduce the weight borne by weaker extremities and to prevent
contractures. Since 1989, OrthoConcepts has supplied the Seating
System to more than 2700 patients.
3. HCFA's Classification of the OrthoConcepts Seating System
 On December 7, 1989, OrthoConcepts informed a regional
HCFA office that OrthoConcepts would soon begin marketing the
Seating System nationwide. OrthoConcepts' letter inquired about
the Medicare coverage status of the Seating System and asked HCFA
to establish a new billing code (known as a "L code," a
standardized billing classification for "orthotics," or braces)
that would allow the Seating System to be reimbursed as a brace. 
The regional office replied in January of 1990, advising
OrthoConcepts that Part B covered the Seating System as DME, not as
orthotics, and that it would provide no L Code for billing the
Seating System as an orthotic. 
 The regional office also wrote its private carriers
regarding the Seating System, instructing them to treat the device
as DME. By letter dated February 21, 1990, the carrier then
responsible for OrthoConcepts' claims, Nationwide Insurance,
notified OrthoConcepts of the HCFA regional office's letter and
informed it that its products "are classified as [DME]; not
orthotics."
 In late 1992, HCFA reorganized its system for processing
claims for DME and orthotics, replacing local carriers with four
regional carriers known as "DMERCs." HCFA instructed the DMERCs to
issue uniform reimbursement policies. In August, 1993, the DMERCs
announced that they would reimburse certain orthotic seating
systems (known by the billing designations or "K-codes" as K-0115
and K-0116) as braces. These seating systems were functionally
quite similar to the OrthoConcepts Seating System, differing
principally in that they were fitted using a plaster cast of the
individual patient rather than the manually-adjusted attachments
that are part of the Seating System. The following April, after
learning of this billing practice, HCFA informed the DMERCs that K-
codes 0115 and 0116 described DME, not orthotics. The DMERCs in
turn notified their respective suppliers of HCFA's determination.
 Despite HCFA's 1990 letter declaring the Seating System
DME, OrthoConcepts, through its corporate affiliates, continued to
bill Seating Systems supplied to patients at SNFs as an orthotic. 
Upon learning of this practice, HCFA's Region A DMERC suspended
Medicare payments to OrthoConcepts in December, 1994. Following a
meeting with OrthoConcepts representatives and an inspection of
SNFs where the Seating System was in use, one of the carriers
concluded that the billed equipment was in fact DME, and notified
the OrthoConcepts affiliates that it was obligated to refund the
Part B payments. Soon thereafter, the Region B and Region C DMERCs
denied OrthoConcepts reimbursement.
 OrthoConcepts appealed from the carriers' denials of
their Part B claims. In the Region A appeal, a Part B hearing
officer issued a decision on August 30, 1995, finding that the
Seating System was DME and concluding that Part B did not provide
reimbursement for the disputed claims. However, after an ex partehearing, an ALJ reversed the hearing officer's decision on January
3, 1996, ruling that the Seating Systems "[were] orthotic braces
and not wheelchairs." On March 1, 1996, the Appeals Board denied
HCFA's petition to review the ALJ's decision. 
 The Region B and Region C appeals were consolidated
before a carrier fair hearing officer. On February 9, 1996, the
hearing officer decided that the Seating System was an orthotic
device rather than DME. This ended the matter, as the statute
gives HCFA no administrative appeal from a hearing officer's
adverse decision. 
 The net result of these proceedings was that by early
1996, HCFA's view of the Seating System as DME as expressed in
its 1990 letter to OrthoConcepts and its 1994 notice to its
carriers was at odds with the decisions of an ALJ and a hearing
officer.
 These decisions prompted HCFA to issue HCFAR 96-1, which
became effective September 18, 1996. Noting the above-mentioned
decisions classifying the Seating System as an orthotic, the
Ruling's stated purpose is "to provide clarification and guidance
regarding the scope and meaning of the statutory benefits for
'orthotics' and '[DME].'" HCFAR 96-1 at 2. The Ruling discusses
the relevant statutes, regulations, legislative history, and
administrative materials before reaching its conclusion: the
definition of "orthotics" "is limited to leg, arm, back, and neck
braces that are used independently [of], rather than in conjunction
with, or as components of, other kinds of medical equipment." Id.at 10. The Ruling also provides several illustrations of DME, one
of which unmistakably refers to the OrthoConcepts Seating System. 
See id. at 7-8.
 On February 26, 1997, two Medicare beneficiaries who used
the Seating System in SNFs and three OrthoConcepts suppliers
(hereinafter, Appellees will be referred to collectively as
"OrthoConcepts") brought the present district court action
challenging HCFAR 96-1. Appellees advanced the procedural claim
that HCFAR 96-1 was invalid, having been adopted without compliance
with the notice-and-comment procedures of the Administrative
Procedure Act ("APA"), 5 U.S.C. 553, and the Medicare statute, 42
U.S.C. 1395hh. Appellees also made the substantive claim that
HCFAR 96-1 was arbitrary and capricious, see 5 U.S.C. 706(2)(A). 
Appellees sought a declaration that the Ruling was void and that
the Seating System was reimbursable as a brace. They also
requested a preliminary injunction blocking HCFA from enforcing the
Ruling.
 After holding a hearing on Appellees' motion for a
preliminary injunction, the district court notified the parties
that it would issue a final determination on the merits of
Appellees' claims. On March 7, 1997, the district court ruled that
HCFAR 96-1 is a substantive rule and, therefore, invalid because
HCFA issued it without following notice and comment procedures. 
The court went on to hold that, the definitions of DME and
orthotics in effect prior to the Ruling prevented HCFA from
treating the Seating System as DME. (The court left open the
possibility that HCFA could validly re-enact the Ruling after using
notice and comment procedures.) The court also enjoined HCFA from
denying Appellees reimbursement for the Seating System.
 This appeal followed.

 DISCUSSION
1. The Interpretative Rule Exception to the Requirement of 
 Notice and Comment

 Whether an administrative ruling is substantive or
interpretative is a question of law that this court reviews denovo. See La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175,
1177 (1st Cir. 1992) ("Convaleciente"). 
 The APA exempts "interpretative rules" from its notice
and comment procedures. 5 U.S.C. 553(b)(B). The Medicare Act
expressly incorporates the APA's exemption for interpretive rules. 
See 42 U.S.C. 1395hh(b)(2)(C) (1994). 
 The line between a legislative or substantive rule and an
interpretative one is, as many courts have noted, far from clear. 
See, e.g., Convaleciente, 965 F.2d at 1177. The APA itself does
not define "substantive" and "interpretive" (or, in the APA's
nomenclature, "interpretative") rules. Moreover, courts and other
authorities have provided any number of definitions, lending
further imprecision to the field. Nevertheless, a few reasonably
clear principles have emerged, leading us to conclude that HCFAR
96-1 is interpretative, and could be promulgated without notice and
comment procedures.
 The most authoritative explanation of the
substantive/interpretative distinction is that provided by the
Attorney General's Manual on the Administrative Procedure Act
(1947). The Attorney General's Manual described an interpretive
rule as one "issued by an agency to advise the public of the
agency's construction of the statutes and rules which it
administers." Id. at 30 n.3. Courts have routinely quoted this
definition with approval. See Shalala v. Guernsey Memorial Hosp.,
514 U.S. 87, 99 (1995); Chrysler Corp. v. Brown, 441 U.S. 281, 302
n.31 (1979); Convaleciente, 965 F.2d at 1178. The Attorney
General's Manual defines substantive, or legislative, rules as
those that 
 are issued by an agency pursuant to statutory
 authority and which implement the statute
 [such as the Securities and Exchange
 Commission's proxy rules issued pursuant to
 the Securities Exchange Act of 1934, 15 U.S.C.
 78n(b)]. Such rules have the force and
 effect of law. 
 
 Id.
 These definitions have caused us to observe "that the
distinction between legislative and interpretative rules has to do
in part with the authority" law-making versus law-interpreting
 "under which the rule is promulgated." Levesque v. Block, 723
F.2d 175, 182 (1st Cir. 1982). The Seventh Circuit has stated that
"rules are legislative when the agency is exercising delegated
power to make law through rules, and rules are interpretative when
the agency is not exercising such delegated power in issuing them." 
Metropolitan Sch. Dist. v. Davila, 969 F.2d 485, 490 (7th Cir.
1992). 
 Where a rule falls along the interpretative/legislative
spectrum will turn in many cases on the novelty of a rule's
substantive content. "If a rule creates rights, assigns duties, or
imposes obligations, the basic tenor of which is not already
outlined in the law itself, then it is substantive." 
Convaleciente, 965 F.2d at 1178 (emphasis supplied); see alsoAmerican Mining Congress v. Mine Safety & Health Admin., 995 F.2d
1106, 1112 (D.C. Cir. 1993) (stating that a rule is legislative if
"in the absence of the rule there would not be an adequate
legislative basis for enforcement action or other agency action to
confer benefits or ensure the performance of duties"). Put more
succinctly, a rule is exempt from notice and comment as an
interpretative rule if it does not "effect a substantive change in
the regulations." Guernsey, 514 U.S. at 100 (internal quotation
marks and citation omitted).
 On its face, HCFAR 96-1 appears to satisfy the criteria
for an interpretive rule. We have said that an important factor in
determining whether a rule is interpretive is the agency's own
characterization. See Convaleciente, 965 F.2d at 1178; Levesque,
723 F.2d at 182. It is not disputed that HCFA intended HCFAR 96-1
to be interpretative. The Ruling itself purports only to "clarify"
the proper application of existing statutory and regulatory
definitions to a particular case.
 More importantly, the Ruling does not establish any new
standard. Rather, it addresses an area of ambiguity: whether a
device comprising both orthotic and DME components should be
reimbursed as a brace or as DME. The statutory and regulatory
definitions of DME and orthotics predated the Ruling, but neither
was so complete as to provide an unambiguous answer to the question
of the Seating System's classification. These definitions created
the need for clarification precisely the function of an
interpretative rule and they provided an "adequate legislative
basis for [the agency action]." American Mining Congress, 995 F.2d
at 1112. The Ruling does not stake out any ground "the basic tenor
of which [was] not already outlined in the law itself." 
Convaleciente, 965 F.2d at 1178.
 We find guidance in the Supreme Court's recent Guernseydecision. There, the Court considered whether the interpretative
rule exemption applied to an accounting provision in HCFA's
Provider Reimbursement Manual ("PRM"). Like HCFAR 96-1, the PRM
provision at issue in Guernsey "[did] not purport to be a
regulation and [had] not been adopted pursuant to the notice-and-
comment procedures of the [APA]." 514 U.S. at 90. The Court
determined that the PRM provision concerned "[t]he only question
unaddressed by the otherwise comprehensive regulations on this
particular subject." Id. at 97. The Court concluded that the
measure "[was] a prototypical example of an interpretive rule"
because the PRM provision merely applied existing law, id. at 99,
and was not "inconsistent with any of the Secretary's existing
regulations," id. at 100.
 The reasoning in Guernsey applies here. The Medicare
statute and regulations provide a comprehensive classification of
equipment as DME or orthotics. The Ruling addresses a small
overlap in this scheme. The answer the Ruling provides is
consistent with the existing definitions. The statute and
regulations define braces only by referring to particular types of
braces, none of which would have to include a system of braces
attached to a wheeled base. See 42 U.S.C. 1395x(s)(9). But
clearly the Seating System fits within one category or the other,
so HCFA was acting in an interpretive, rather than legislative,
capacity. See United Technologies Corp. v. EPA, 821 F.2d 714, 719-
20 (D.C. Cir. 1987) ("If the rule is based on specific statutory
provisions, and its validity stands or falls on the correctness of
the agency's interpretation of those provisions, it is an
interpretative rule.").
 By the same token, the Ruling is not inconsistent with
existing law because the statutory and regulatory definitions of
DME are broad enough to include the Seating System. It is conceded
that the Seating System "[c]an withstand repeated use," 42 C.F.R.
 414.202, a principal regulatory criterion differentiating DME
from other equipment. Moreover, it is not inconsistent to treat
the Seating System which is, after all, a wheeled device in which
a patient sits as a customized wheelchair, a piece of equipment
specifically identified as DME. See 42 U.S.C. 1395x(n); 42
C.F.R. 414.224. Nothing in any of the existing statutory or
regulatory definitions is inconsistent with HCFAR 96-1. Together,
the extant definitions were ambiguous in respect to the category
within which the Seating System best fit, and "the quintessential
example of an interpretive rule" is "[a] statement seeking to
interpret a statutory or regulatory term." Orengo Carballo v.
Reich, 11 F.3d 186, 195 (D.C. Cir. 1993).
 OrthoConcepts' main contention both in the district court
and on appeal was that HCFAR 96-1 was legislative because it
changed HCFA's policy of reimbursing the Seating System as DME. 
This argument rests on erroneous views of both the law and the
facts. 
 The legal point is clear enough: in order for notice and
comment to be necessary, "the [later] rule would have to be
inconsistent with another rule having the force of law, not just
any agency interpretation regardless of whether it had been
codified." Chief Probation Officers v. Shalala, 118 F.3d 1327,
1337 (9th Cir. 1997) (White, J. (Retired, sitting by designation)). 
The Supreme Court in Guernsey intimated this much, concluding that
the provision there was interpretive because it did not contradict
"any of the Secretary's existing regulations." 514 U.S. at 100
(emphasis supplied); see also id. at 111 (O'Connor, J., dissenting)
(observing that interpretive rules "must explain existing law and
not contradict what the [extant] regulations require"). The lower
federal courts are in agreement on this score. See, e.g., Orengo,
11 F.3d at 196 (explaining that a subsequent rule is legislative
"[o]nly where [the] second rule repudiates or is irreconcilable
with [a prior legislative rule]"); White v. Shalala, 7 F.3d 296,
304 (2d Cir. 1993) ("If the rule is an interpretation of a statute
rather than an extra-statutory imposition of rights, duties or
obligations, it remains interpretive even if the rule embodies the
Secretary's changed interpretation of the statute."); Davila, 969
F.2d at 492 ("[A]n agency's change in its reading of the statute
does not necessarily make the rule announcing the change
legislative."). As already stated, see supra, nothing in the
statute or regulations addresses the precise issue decided in HCFAR
96-1. Thus, even supposing HCFA's pre-Ruling policy was different,
the earlier policy would not prevent HCFA from adopting a contrary
new interpretative rule.
 However, we very much doubt that the Ruling, by limiting
the coverage of braces to devices used independently of DME, added
something new to HCFA's policies. In siding with OrthoConcepts,
the district court concluded that the agency's informal
pronouncements and practices regarding the reimbursement of the
Seating System indicated a pre-Ruling policy to treat the Seating
System as an orthotic. A number of factors, however, suggest the
opposite conclusion.
 First, the HCFA regional office's 1990 letter to
OrthoConcepts specifically stated that the Seating System was DME. 
The district court disregarded this letter because a former
OrthoConcepts attorney submitted an unsworn affidavit stating that
the office promised to issue a letter rescinding the corresponding
order instructing its carriers to treat the Seating System as DME. 
However, as the district court found, "there is no evidence that
HCFA ever sent such a letter," nor is there any evidence
corroborating the unsworn affidavit. 
 Second, HCFA instructed its carriers on three separate
occasions that devices quite similar to the Seating System should
be treated as DME. The first two memoranda, issued in 1987 and
1989, dealt with "contoured corrective seats," and concluded, as
the 1989 memorandum put it, that the "only statutory provision that
could apply to such equipment" was DME. The district court
dismissed these memoranda on the ground that, by questioning
whether the devices served a medical purpose, they relied on an
alternative basis for denying the contoured corrective seats
coverage. However, we cannot see how the inclusion of this
complementary argument contradicts or negates the independent
conclusion that the equipment at issue was DME. 
 A further manifestation of HCFA's earlier policy was its
1994 instruction to treat as DME equipment designated by the K-
codes 0115 and 0116. The district court dismissed the 1994
instruction as "not directly on point," but the instruction set out
a policy for equipment that, like the Seating System and the first
illustration given in HCFAR 96-1, contained orthotic attachments. 
While the 1994 instruction addressed equipment with a different
technical design, it implicitly contained the same principle as the
Ruling: DME includes orthotic components that cannot be used
independently of attached DME. That the 1994 instruction (as well
as the 1987 and 1989 memoranda) did not address the precise
equipment at issue here does not mean that HCFA had no relevant
policy: "an interpretive statement may 'suppl[y] crisper and more
detailed lines than the authority being interpreted.'" Orengo, 11
F.3d at 195 (quoting American Mining Congress, 995 F.2d at 1112). 
Thus, we reject OrthoConcepts' contention that HCFAR 96-1 effected
a substantive change in the regulations.
 As a fallback position, OrthoConcepts argues that HCFAR
96-1 could not be valid without notice-and-comment rulemaking
because it has a binding effect on agency personnel. This argument
confuses two senses in which a rule may bind. Of course, a rule
with the force and effect of law binding not only the agency and
regulated parties, but also the courts is by definition a
substantive rule. However, a rule may lack this force and still
bind agency personnel. Accordingly, "[a]n interpretative rule
binds an agency's employees, including its ALJs, but it does not
bind the agency itself." Kenneth C. Davis & Richard J. Pierce,
Jr., Administrative Law Treatise 6.3 at 104 (3d ed. 1996 & Supp.
1997). In other words, a rule may be "binding" but not, for
purposes of notice and comment, "substantive," or legislative. We
rejected an argument almost identical to OrthoConcepts' in
Levesque: "If plaintiffs mean that any rule that an agency intends
to be effective must be legislative, they are plainly wrong. Every
rule is intended to have some effect." 723 F.2d at 181-82; see
also American Mining Congress, 995 F.2d at 1111 ("[R]estricting
discretion tells one little about whether a rule is
interpretive."); Davila, 969 F.2d at 493 ("All rules which
interpret the underlying statute must be binding because they set
forth what the agency believes is congressional intent."). The
fact that the Ruling binds HCFA carriers and ALJs is entirely
consistent with its status as an interpretative rule.
 We therefore reject OrthoConcepts' argument that HCFAR
96-1 was not legally adopted because of the absence of notice and
comment procedures. 
2. Injunction
 The district court enjoined the Secretary from enforcing 
the Ruling and from denying OrthoConcepts' reimbursement for its
Seating System under the braces benefit. It granted this relief
based on the erroneous belief, supra, that HCFAR 96-1 was invalidly
promulgated, leaving HCFA without an adequate basis for treating
the Seating System as DME. As held above, however, HCFAR 96-1 was
properly promulgated; we now further hold that the Ruling's
interpretation of the Seating System as DME is adequately supported
by the Medicare statute and regulations. We therefore vacate the
injunction.
 A threshold question is what deference is owed to an
interpretative rule such as HCFAR 96-1. The Supreme Court has not
expressed a view on whether or to what extent the Chevronframework, see Chevron, U.S.A., Inc. v. Natural Resources Defense
Council, 467 U.S. 837 (1984), applies to interpretive, rather than
legislative rules, and other circuits are split on the issue. 
 We need not decide the issue here because, even assuming
arguendo that Chevron deference is not applicable to interpretative
rules, we are persuaded that HCFAR 96-1 is an appropriate
construction of the statute. We are guided in this regard by
Skidmore v. Swift & Co., 323 U.S. 134 (1944). There, the Court
considered a rule that, having been issued by an agency not
authorized to make legislative rules, was necessarily
interpretative and without the force of law. See id. at 138. The
Supreme Court approved the agency's interpretation and explained
the proper approach to judicial review of interpretative rules:
 [T]he rulings, interpretations and opinions of
 the Administrator under this Act, while not
 controlling upon the courts by reason of their
 authority, do constitute a body of experience
 and informed judgment to which courts and
 litigants may properly resort for guidance. 
 The weight of such a judgment in a particular
 case will depend upon the thoroughness evident
 in its consideration, the validity of its
 reasoning, its consistency with earlier and
 later pronouncements, and all those factors
 which give it power to persuade, if lacking
 power to control.
 
 323 U.S. at 140. Considering all of these factors, we think the
interpretation embodied in HCFAR 96-1 is wholly supportable.
 First, as already discussed, see supra, HCFAR 96-1 is
generally consistent with HCFA's earlier informal pronouncements. 
See Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 517 n.13
(1981) (describing "scrutiny applicable to interpretive rules" as
involving "due deference to consistent agency practice"). Hence to
the extent that inconsistency with prior policies might lead us to
find an interpretative rule arbitrary or capricious, we see no
inconsistencies of such a nature. 
 Second, we find the Ruling to be a persuasive reading of
the statute and HCFA's regulations. Those materials establish
three criteria for classifying a device as DME: the item must be
"durable," i.e., able to "withstand repeated use"; it must be
reasonably necessary "medical equipment"; and it must be
"appropriate for use in the home." 42 U.S.C. 1395x(n); 42 C.F.R.
 414.202. The Seating System meets each of these criteria, and
OrthoConcepts advances no serious argument to the contrary. 
 Moreover, DME unequivocally includes "wheelchairs," see 
42 U.S.C. 1395x(n), and the Seating System serves the same (as
well as additional) functions as a wheelchair. OrthoConcepts' own
expert admitted that a casual observer might conclude that the
product "looks like a wheelchair." HCFAR 96-1 also conforms to
congressional intent as expressed in P.L. 101-508, 4152(c)(4),
the interim amendment to 42 U.S.C. 1395m(a)(4) specifying that
customized wheelchairs are DME. The legislative history of this
provision shows that Congress intended DME to include "postural
control devices" and "custom molded cushions and inserts, or
lateral supports" associated with wheelchairs. H.R. No. 101-881,
at 268 (1990), reprinted in 1990 U.S.C.C.A.N. 2017, 2270. In
short, it takes no great leap to conclude that congressional intent
is well effectuated by treating the Seating System as DME.
 Further support for HCFA's view is provided by the
American Orthotic and Prosthetic Association, which has stated that
the Seating System is a brace only when that term is used "in its
most broad sense," and that the items are "more accurately
described as a subset of orthoses called seating systems or wheeled
mobility devices." 
 Even assuming that the entire device could alternatively
be reasonably construed to satisfy the definition of a brace (which
includes only examples of individual braces), there was nothing
precluding HCFA from resolving the ambiguity in favor of DME. The
district court concluded that equipment that could be categorized
as both DME and an orthotic must be treated as an orthotic based on
a portion of the MCM's definition of DME that provides that
"[t]here are other items which, although durable in nature, may
[sic] fall into other coverage categories such as braces [and other
categories]." MCM 2000.1. We do not read this language as
establishing DME as a category of last resort; it does not say, for
instance, that any equipment that could be classified as a brace is
necessarily not DME. Instead, it uses the term "may," suggesting
that the classification of equipment that is both brace-like and
durable is left to HCFA. Accordingly, we do not accept
OrthoConcepts' argument that HCFA had bound itself to resolve cases
of ambiguity on the side of braces.
 We also note that in establishing its policy, HCFA has
been deliberate. HCFA has on multiple occasions met with
OrthoConcepts' representatives, examined the equipment at issue,
and given consideration to the statute and regulations as applied
to the Seating System and comparable devices. HCFA's thoroughness
belies OrthoConcepts' claim that HCFAR 96-1 is merely a litigating
position entitled to no deference under Smiley v. Citibank, N.A.,
116 S. Ct. 1730, 1736 (1996). 
 Finally, the classification of medical equipment for
reimbursement purposes is the sort of technical question that
generally benefits from HCFA's expertise and experience. SeeStowell v. Secretary of Health & Human Servs., 3 F.3d 539, 544 (1st
Cir. 1993) (stating that "[c]ourts should not cavalierly discount
the value of agency expertise painstakingly garnered in the
administration, over time, of programs of remarkable intricacy" and
citing cases); Hospital San Jorge v. Secretary of Health, Educ. &
Welfare, 616 F.2d 580, 589 (1st Cir. 1980) (Campbell, J.,
concurring) (stating that "[m]atters of [Medicare] accounting,
unless they 'be the expression of a whim rather than an exercise of
judgment,' are for the agency" (quoting American Tel. & Tel. Co. v.
United States, 299 U.S. 232, 237 (1936))). Given HCFA's expertise
in administering Medicare Part B, the logic of its interpretation,
and the consistency of its policy, we conclude that the denial of
claims for reimbursement of the Seating System under the brace
benefit was not arbitrary or capricious, and thus withstands
OrthoConcepts' challenge under 5 U.S.C. 706(2)(A).
 The judgment of the district court is reversed and
remanded with instruction to vacate the injunction and to enter
judgment for Appellants.